IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JAMES LEE HENDERSON,         Petitioner | § § | |
| vs. | § | 1:06cv507 |
| NATHANIEL QUARTERMAN, Director, Texas Department of Criminal Justice, Correctional Institutions Division,         Respondent | § § § | |

MEMORANDUM OPINION

Petitioner James Lee Henderson ("Henderson") was authorized by the Fifth Circuit Court of Appeals to file a successive petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2244(b). Henderson was convicted of capital murder and sentenced to death in June 1994 in the 102nd Judicial District Court of Red River County, Texas, in cause No. 181CR1293 styled *The State of Texas v. James Lee Henderson.* Henderson challenges his death sentence pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002), which prohibits the execution of mentally retarded criminals, of which he claims to be. The Fifth Circuit Court of Appeals found that Henderson made a *prima facie* showing of mental retardation and granted his motion for authorization to file a successive *habeas* petition. In remanding the case to this Court to decide the issue, the Appellate Court noted that unless the doctrine of equitable tolling applies, Henderson's successive petition is time barred. *In re Henderson*, 462 F.3d 413, 417 (5th Cir. 2006); *see* 28 U.S.C. § 2244 (d)(1).

*Procedural History*

Henderson was convicted and sentenced to death in June 1994 for the murder of an elderly woman in her home. His judgment and sentence were affirmed on direct appeal to the Texas Court of Criminal Appeals in 1996. *Henderson v. Texas*, No. 71,928 (Tex.Crim.App. Dec. 18, 1996). Henderson then filed a state writ of *habeas corpus* with the trial court. The Texas Court of Criminal Appeals, adopting the recommendation of the trial court, denied relief in July 1998. *Ex parte Henderson*, No. 37,658-01 (Tex.Crim.App. July 8, 1998). Henderson's petition for *certiorari* was denied by the United States Supreme Court in November 1998. *Henderson v. Texas*, 525 U.S. 1004 (1998). He then filed his first subsequent state writ raising claims unrelated to the issue here, which was denied as an abuse of the writ in October 1999. *Ex parte Henderson*, No. 37,658-02 (Tex.Crim.App. October 27, 1999).

In January 1999, while Henderson's second state writ was pending, he filed his initial federal *habeas corpus* petition. The petition was denied in September 2001 and the Fifth Circuit affirmed the denial of *habeas* relief. *Henderson v. Cockrell*, 333 F.3d 592 (5th Cir. 2003). The Supreme Court denied *certiorari* on January 26, 2004. *Henderson v. Dretke*, 540 U.S. 1163 (2004).

On March 24, 2004, Henderson filed a second subsequent state application for writ of *habeas corpus* claiming, for the first time, that he is mentally retarded and therefore ineligible for the death penalty under *Atkins*. The case was remanded to the trial court for an evidentiary hearing. The Texas Court of Criminal Appeals agreed with the trial court's determination that Henderson failed to show, by a preponderance of the evidence, that he is mentally retarded, and on January 25, 2006, denied Henderson relief. On March 6, 2006, Henderson filed a motion

seeking authorization to file a successive petition for writ of *habeas corpus* with the Fifth Circuit. The Fifth Circuit granted Henderson authorization to file his successive petition. The Court of Appeals specifically noted that "unless the doctrine of equitable tolling applies, Henderson's successive petition is time-barred" citing 28 U.S.C. § 2244(d)(1) and left it to this Court to decide whether Henderson's case presents the "rare and exceptional circumstances" that would entitle him to equitable tolling.

### *Statute of Limitations*

In his successive writ petition, Henderson challenges his death sentence pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002). The Director, while taking issue with the merits of Henderson's claim, argues that the claim is time barred because it was not raised within the one year statute of limitations mandated by the AEDPA, 28 U.S.C. § 2244(d)(1). In cases like Henderson's, the year commences to run from "the date on which the constitutional right asserted was . . . newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). The Supreme Court issued *Atkins* on June 20, 2002, thus the one-year limitations period for filing a *habeas* application based on *Atkins* expired on June 20, 2003. The AEDPA provides that the limitations period is tolled while a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending. Henderson did not have a post-conviction application for relief pending in state court which would allow for tolling of the statute. Henderson concedes that his federal writ was not filed within the one year limitations period contained within the statute, but argues that he is entitled to equitable tolling of the limitations period. The courts have recognized that the doctrine of equitable tolling applies to the AEDPA's statute of limitations.

3

Below is a chronological summary of important dates and events.

*Chronology*

| | |
|---|---|
| June 20, 2002: | United States Supreme Court issues opinion in *Atkins v. Virginia*, 536 U.S. 304 (2002) |
| June 20, 2003: | One year statute of limitations runs to file a petition for writ of *habeas corpus* under 28 U.S.C. § 2244(d)(1) raising *Atkins* claim |
| January 26, 2004: | United States Supreme Court denies *certiorari* on Henderson's initial federal petition for writ of *habeas corpus* |
| February 11, 2004: | Texas Court of Criminal Appeals abandons the two-forum rule in *Ex parte Soffar*, 143 S.W.3d 804, 806 (Tex.Crim.App. 2004) |
| March 24, 2004: | Henderson files successive state application for *habeas corpus* relief raising *Atkins* claim |
| April 21, 2004: | Texas Court of Criminal Appeals remands Henderson's case to the trial court for a hearing |
| January 25, 2006: | Texas Court of Criminals adopts trial court's findings and conclusions and denies relief |
| March 6, 2006: | Henderson files motion to file successive petition for writ of *habeas corpus* with Fifth Circuit Court of Appeals raising *Atkins* claim |

*Equitable Tolling*

As stated above, Henderson did not have an application for post-conviction relief pending in state court during the one-year limitations period. However, during that time, his initial federal writ was making its way through the federal system, finally being disposed of when the Supreme Court denied *certiorari* in January 2004. Henderson claims that the Court should grant equitable relief and allow the statute of limitations to be tolled because Texas's two-forum rule prevented him from timely filing his federal petition raising his *Atkins* claim.

During the limitations period, a unique rule in the Texas courts prevented *habeas* petitioners from maintaining both state and federal applications at the same time. Referred to as the "two-forum rule," it forced a petitioner to "decide which forum he [would] proceed in, because [the state courts would not] consider a petitioner's application so long as the federal

courts retain[ed] jurisdiction over the same matter." *Ex parte Green*, 548 S.W.2d 914, 916 (Tex.Crim.App. 1977). Accordingly, the two-forum rule prevented Henderson from filing his *Atkins* claim in state court while his writ of *habeas corpus* was pending in federal court, and it also kept him from bringing his *Atkins* claim in federal court because it would have been dismissed as unexhausted. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982) (requiring dismissal of "mixed petitions" containing both exhausted and unexhausted claims). *Habeas* claims brought in federal court that have not first been addressed by the state court are considered unexhausted.

The doctrine of equitable tolling preserves a petitioner's claims under those "rare and exceptional" circumstances when a strict application of the AEDPA's statute of limitations would be inequitable. A petitioner bears the burden of proof concerning equitable tolling. To benefit from the doctrine of equitable tolling, a petitioner must demonstrate that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way and precluded him from satisfying the statute of limitations.

The Fifth Circuit has recognized the potential of the two-forum rule to present a "rare and exceptional circumstance." *See In re Hearn*, 376 F.3d 447, 457 (5th Cir. 2004) (*Hearn I*). In *Hearn*, the statute of limitations expired while the petitioner was awaiting a decision on his Certificate of Appealability. The Court of Appeals, in allowing the petitioner to prepare a tolling claim, stated that "[t]he two-forum rule appears to have effectively forced Hearn to choose between federal review of his pending writ petition and his right to pursue successive *habeas* relief under *Atkins*." *Id*. Upon motion for rehearing, the Fifth Circuit clarified its opinion in *Hearn I* and found that equitable tolling applied "because of the combination of the problem created by the Texas two-forum rule, . . . and the withdrawal of petitioner's counsel." *In re*

5

*Hearn*, 389 F.3d 122, 123 (5th Cir. 2004) *(Hearn II)*.

In *In re Wilson*, 442 F.3d 872 (5th Cir. 2006), the statute of limitations again expired while the petitioner was awaiting a decision on his Certificate of Appealability. However, on the very last day of the limitations period, the petitioner filed successive applications for *habeas* relief in both state and federal court. The Fifth Circuit dismissed without prejudice the petitioner's application for failure to exhaust his *Atkins* claim in state court and the petitioner returned to state court to file his *Atkins* claim. After the Texas Court of Criminal Appeals denied the petitioner's state application, the petitioner filed his second successive application with the federal district court. However, because the petitioner did not first obtain authorization to file a successive application with the Fifth Circuit, the district court dismissed the application as unauthorized. When the petitioner finally properly filed his new motion for authorization, the motion was time-barred. The Fifth Circuit, however, found that the petitioner had "demonstrated the sort of 'rare and exceptional circumstances' that justify equitable tolling of the limitations period." Noting the similarity between the dilemma in the petitioner's case and that in *Hearn*, the Fifth Circuit stated that "[n]ot only did the two-forum rule prevent Wilson from filing his *Atkins* claim in state court, it also kept him from amending his federal application to include an *Atkins* claim because it would have been dismissed as unexhausted."

Assuming the two-forum rule presents a rare and exceptional circumstance in this case, Henderson's "diligence in pursuing *habeas* relief in state and federal court is an important factor in assessing his entitlement to equitable tolling." *See id*. at 877 (citing *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999)). On January 26, 2004, when the Supreme Court denied *certiorari* on his initial federal writ, Henderson's case was no longer pending in federal court and the two-

6

forum rule was not an obstacle to Henderson's pursuit of relief in state court on his *Atkins* claim. Additionally, on February 11, 2004, the Texas Court of Criminal Appeals abandoned the two-forum rule in *Ex parte Soffar*, 143 S.W.3d 804, 806 (Tex.Crim.App. 2004), thereby paving the way for Henderson to file something in federal court alerting the court that he was pursuing relief in the state court on his unexhausted *Atkins* claim.[1]

Henderson's counsel claims that he acted diligently by having Henderson evaluated for mental retardation January 16, 2004 and then filing his state *Atkins* writ five days after the report on the evaluation was completed. This begs the question, why did Henderson's counsel wait a year and a half after *Atkins* was decided to have Henderson evaluated? Henderson does not argue that he did not discover the possibility of raising an *Atkins* claim until that later date. Furthermore, the two-forum rule does not explain why Henderson waited until two months after the Supreme Court denied *certiorari* on his initial federal writ to file his state *Atkins* claim.

Nor does the two-forum rule explain why Henderson waited five weeks after the Texas Court of Criminal Appeals denied his *Atkins* claim to file his motion for authorization to file a successive petition in federal court. The two-forum rule certainly does not explain Henderson's two-year delay after *Soffar* to inform the federal court that he wished to file an *Atkins* claim once his state *Atkins* claim was resolved. In *Wilson*, the Fifth Circuit noted that "[a]lthough Wilson arguably might have done more to preserve the availability of federal review while his successive state application was still pending, immediately following the state court's ruling, Wilson did attempt to file in federal court . . . ." *Wilson*, 442 F.3d at 877. It also distinguished *Wilson* from

---

[1] For example, Henderson could have filed a conditional motion for authorization to file a successive writ with the Fifth Circuit.

*Hearn* stating that the petitioner in *Hearn* "made no federal filings at all during the limitations period." *Id*. The Court of Appeals found that Wilson's diligence in his efforts to preserve review of his *Atkins* claim cut "strongly in favor of equitable tolling in his case." *Id*. In the instant case, as in *Hearn*, Henderson did nothing to alert the federal court of his desire to raise an *Atkins* claim. The Court is not persuaded that Henderson acted diligently in preserving his mental retardation claim.

***State trial court hearing on the issue of mental retardation***

It is important to note that the trial court conducted a full hearing on the issue of mental retardation.[2] Judge Cochran, concurring in the Texas Court of Criminal Appeals' denial of relief, filed a statement detailing some of the testimony at the trial court hearing. The following account of the mental retardation hearing is taken from Judge Cockran's statement.

Numerous witnesses testified at the hearing including one mental health expert for Henderson and two for the State. Dr. Susana Rosin, who testified for Henderson, stated that she administered the Wechsler Adult Intelligence Scale III (WAIS-III) in January 2004 while he was on death row. Henderson obtained a verbal score of 66, a performance score of 73, and a full-scale score of 66.[3] Dr. Rosin also administered several other psychological tests, reviewed

---

[2] In his Response to Motion for Summary Judgment (doc. #25), Henderson argues that he was not afforded an adequate and fair hearing because trial court denied his discovery requests and did not allow him to file proposed findings of fact and conclusions of law. Specifically, Henderson complains that the trial court denied his request to depose the expert witnesses prior to the hearing.

[3] The *Atkins* Court left it to the states to develop appropriate ways to determine when an offender is so impaired as to fall within the range of mentally retarded offenders who are ineligible for the death penalty. The Texas legislature has not yet enacted any guidelines for determining mental retardation in the capital punishment context. However, in *Ex parte Briseno*, 135 S.W.3d 1 (Tex.Crim.App. 2004), the Texas Court of Criminal Appeals set forth interim

numerous trial records as well as Henderson's juvenile and adult criminal history. It was her opinion that Henderson is mildly mentally retarded. Steve Gilliland, a sociologist for the Texas Department of Criminal Justice, testified for the State. Gilliland stated that he did an intake assessment of Henderson when he arrived at death row in 1994. This assessment included giving Henderson a short form of the WAIS-R. Henderson's I.Q. tested at 83. Dr. Michael Gillhausen, a licensed psychologist and Gilliland's then-current supervisor, also testified for the State. Gillhausen testified that the reliability of the short form WAIS-R is 94% which is "very acceptable." He stated that the reliability of Henderson's 83 I.Q. score "would allow us to state that his I.Q. would fall within the range from seventy-six to ninety, about nine-five percent of the time, . . . ." Gillhausen also stated that Rosin had given Henderson some achievement tests for which Henderson scored at the seventh grade level when the mildly mentally retarded usually

---

guidelines for courts considering state post-conviction claims of mental retardation. In *Briseno*, the court stated that it would apply either the definition of mental retardation promulgated by either the American Association of Mental Retardation (now know as the American Association on Intellectual and Developmental Disabilities (AAIDD)) or the definition found in Texas Health and Safety Code §591.003(3). The AAIDD definition utilizes a three part test:

(1) Significantly subaverage intellectual functioning defined as an IQ of about 70 or below
(2) accompanied by related limitations in adaptive functioning defined as significant limitations in an individual's effectiveness in meeting the standards of maturation, learning, personal independence, and/or social responsibility that are expected for his or her age level and cultural group, as determined by clinical assessment and, usually, standardized scales
(3) the onset of which occurs before the age of 18.

The Texas Health and Safety Code definition is similar:
> Mental retardation means significantly subaverage general intellectual functioning that is concurrent with deficits in adaptive behavior and originates during the developmental period. Adaptive behavior means the effectiveness with or degree to which a person meets the standards of personal independence and social responsibility expected of the person's age and cultural group.

cannot score above the sixth grade.  These discrepancies led Gillhausen to believe Henderson might have been motivated to do poorly on his 2004 post-Atkins I.Q. testing.

Judge Cochran noted that the trial judge found that "[b]ased on Dr. Rosin's affidavit and in-court testimony . . . [her testimony] is less credible than the in-court testimony of Dr. Michael Gillhausen and Mr. Steve Gilliland."  The trial judge found that Rosin's I.Q. test result was based on a "test that she administered after [applicant] learned that establishing himself as mentally retarded could save his life."  The trial judge also explicitly relied upon his personal knowledge and recollection of Henderson's in-court demeanor during both the trial and *habeas* hearing.  Judge Cockran stated that "[a]lthough there was evidence in [the] record indicating that applicant was mentally retarded, there was also significant evidence showing that he was not.  Either finding is supportable by the record evidence.  But as a reviewing court, only reading the record, we must be especially deferential to the trial judge's factual findings, especially because he presided over both the original trial and the *habeas* hearing."

Based on the foregoing, the Court finds that Henderson has not satisfied his burden of proof concerning equitable tolling.  Assuming the two-forum rule presents a rare and exceptional circumstance in this case, Henderson has failed to demonstrate that he has been pursuing his rights diligently.  Henderson waited for two years after Texas abandoned before filing the present motion, or any other motion in federal court.  Between January 25, 2006 and March 6, 2006, Henderson took no action at all to pursue his *Atkins* claim.  The Court finds that Henderson is not entitled to the benefit of equitable tolling in this case.

So **ORDERED** and **SIGNED** this **31** day of **March, 2008.**

_____
Ron Clark, United States District Judge